FOURTH DIVISION

  July 29, 2005 

Nos. 1-04-0250 & 1-04-2119 (Cons.)

THOMAS WILLIAMS,                    )         Appeal from 

                                    )      the Circuit Court

Plaintiff-Appellee,            )        of Cook County. 

                                    ) 

     v.    
                ) 

                                    )

AMERICAN COUNTRY INSURANCE COMPANY, )        

                               )  

Defendant-Appellant and        )

     Counterplaintiff-Appellant     )   

                                    )    

(Thomas Williams, Herman Davila,    )     and Yellow Cab Company, a         )         

Corporation,                        )        Honorable 

                                    ) John K. Madden 

Counterdefendants-Appellees). )        Judge Presiding.                                 

             

    

JUSTICE QUINN delivered the opinion of the court:

Defendant American Country Insurance Company (American Country) appeals from orders of the circuit court of Cook County granting summary judgment in favor of plaintiff Herman Davila and defendant Thomas Williams, and granting Williams' petition for attorney fees and costs pursuant to section 155 of the Illinois Insurance Code (Code) (215 ILCS 5/155 (West 2002)). 

In the underlying action in this case, Davila, a police officer pedestrian, was struck by a taxicab owned by defendant Yellow Cab Company (Yellow Cab) and driven by Williams.  Williams was convicted of misdemeanor battery as a result of the occurrence.  Plaintiff filed suit against Williams and Yellow Cab Company, alleging negligence.  The insurer of both Williams and Yellow Cab, American Country, undertook the defense of the personal injury case.

While the tort action was pending, Williams filed suit seeking a declaration that American Country was obligated to provide him with independent counsel because of a conflict of interest.  Davila was granted leave to intervene.  American Country filed a counterclaim naming Davila, Williams and Yellow Cab, seeking a declaration that it had no duty to defend Williams.  On cross-motions for summary judgment, the trial court granted American Country's motion for summary judgment.  After his motion to reconsider was denied, Davila appealed.  

On appeal, this court affirmed the trial court's determination that our supreme court's holding in 
American Family Mutual Insurance Co. v. Savickas
, 193 Ill. 2d 378 (2000), precluded Williams and Davila from contesting the fact that Williams' battery conviction established that his conduct in injuring Davila was intentional.  
American Country Insurance Co. v. Williams
, 339 Ill. App. 3d 835, 847 (2003).  However, we vacated the trial court's grant of summary judgment and remanded the case to the trial court to determine whether a conflict of interest was present and whether Williams was prejudiced by American Country's failure to pay for independent counsel to represent Williams.  
American Country Insurance Co.
, 339 Ill. App. 3d at 847.

On remand, Williams and Davila filed motions for summary judgment arguing that there was a conflict of interest and Williams suffered prejudice as a result of the conflict.  The trial court found that American Country had a conflict of interest when it assumed Williams' defense in the underlying case and that Williams was prejudiced as a result of the conflict.  Based on these findings, the trial court granted the motions for summary judgment; ordered American Country to provide independent counsel to Williams at American Country's expense; and held that American Country was estopped from asserting any coverage defenses in the underlying action.  American Country now appeals the trial court's judgment.  Williams filed a petition for attorney fees and costs pursuant to section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2002)).  Following a hearing, the trial court granted Williams' petition and entered judgment against American Country in the amount of $150,000 which included $125,000 for attorney fees incurred in both the underlying tort action and the declaratory judgment action and $25,000 as a penalty for vexatious conduct.  American Country also appealed that judgment and this court granted American Country's motion to consolidate these appeals.

        

I. 
BACKGROUND

On October 31, 1996, Davila, an Illinois State Police officer, was on duty outside the Thompson Center in Chicago.  Williams was driving a taxicab east on Lake Street adjacent to the Thompson Center.  While another police officer was directing traffic on Lake Street, Davila observed Williams repeatedly blowing his car horn.  Davila approached Williams' cab, opened the door and leaned inside the cab.  While Davila was leaning inside the cab, Williams began driving, forcing Davila to run alongside the cab for 15 feet.  Davila suffered injuries from the incident.

Williams was charged with misdemeanor battery as a result of his actions on October 31, 1996.  On October 9, 1997, following a jury trial, Williams was convicted of battery to Davila and sentenced to community service and probation.

On May 12, 1998, Davila filed a civil complaint naming Williams and Yellow Cab as defendants.  Both Yellow Cab and Williams were insured by American Country.  At the time of the occurrence, American Country and Yellow Cab were both subsidiaries of a company known as Great Dane Holdings.  The complaint alleged that Williams was the agent and servant of Yellow Cab and was operating a taxicab owned by Yellow Cab.  The complaint alleged that Williams and Yellow Cab were negligent in failing to yield to Davila, in driving recklessly, in failing to keep a proper lookout and in operating a vehicle with defective brakes and steering.  Davila amended his complaint on October 16, 1998, to add a count of negligent entrustment against Yellow Cab.   American Country undertook the defense in this case, retaining Johnson & Bell to represent Williams and Jesmer & Harris to represent Yellow Cab.  Prior to retaining counsel, on October 2, 1997, American Country sent Williams a letter advising him that it was "handling this matter under a complete reservation of rights under the terms and conditions of your policy."  The letter informed Williams that an investigation revealed that Williams was cited with criminal battery and that battery and intentional conduct were specifically excluded by Williams' insurance policy.  The letter then cited the following provision of Williams' insurance policy:

"B. EXCLUSIONS

 1. EXPECTED OR INTENDED INJURY

       'Bodily injury' or 'property damage' expected or         intended from the standpoint of the 'insured.'"

In his answer to Davila's complaint, the attorney retained by American Country to represent Williams, Robert J. Comfort, denied that Williams was an agent of Yellow Cab.  Comfort also asserted an affirmative defense that Davila was guilty of comparative fault.  

In an affidavit, Williams averred that the defense provided by American Country was inadequate and represented a conflict of interest.  Williams averred that on July 21, 1999, he complained about the inadequacy to American Country and requested appointment of alternative counsel.  Williams averred that Johnson & Bell failed to conduct discovery to assist in his defense.  Williams averred that American denied his request for alternative counsel.

On October 1, 1999, Williams filed the instant declaratory action against American Country.  In count I of the complaint, Williams alleged that American Country failed to warn him of an actual or potential conflict of interest in defending the underlying action.  Williams further alleged that there was a conflict of interest in that proof of intentional conduct on the part of Williams would shift responsibility from American Country to Williams.  In count II, Williams alleged that American Country breached its duty to defend through numerous acts and omissions and by failing to provide him with access to the East Bank Health Club, in order to locate a potential witness.

On November 1, 1999, American Country filed a motion to dismiss Williams' declaratory judgment complaint.  American Country alleged that the intentional acts exclusion of the insurance policy could not give rise to a conflict of interest where the underlying case sounded in negligence.  American Country further alleged that it owed no duty to give Williams access to the East Bank Health Club.  The trial court denied American Country's motion to dismiss with respect to count I and granted the motion with respect to count II.  

On December 13, 1999, Davila was granted leave to intervene in Williams' declaratory action.  The parties then filed cross-motions for summary judgment.  Williams alleged that his battery conviction created a coverage defense, therefore presenting a conflict of interest.  In an affidavit, Williams stated that neither American Country nor Comfort informed him of a conflict of interest in Comfort representing him in the underlying tort action and Williams did not consent to such representation.  

American Country's motion maintained that Illinois law has recognized that a conflict of interest arises out of the intentional acts exclusion of an insurance policy only where the underlying complaint alleges both negligence and battery and where punitive damages are sought.  Following argument on the motions, the trial court entered an order stating that, in light of our supreme court's recent decision in 
American Family Mutual Insurance Co. v. Savickas
, 193 Ill. 2d 378 (2000), it could not address the cross-motions until a duty to defend had been determined.  The trial court invited briefs in support of or in opposition to the applicability of 
Savickas
 to the present case.

On October 26, 2000, American Country filed a counterclaim alleging that Williams' battery conviction established that his conduct was intentional and that he was excluded from coverage under the intentional acts exclusion of his policy.  Williams responded that American Country was estopped from denying coverage by reason of prejudice to Williams caused by American directly defending the underlying suit.  

On January 23, 2001, Comfort withdrew his representation of Williams in the tort action and Williams retained Michael Radzilowsky to represent him.  On January 25, 2001, American Country sent a letter to Radzilowsky offering to retain him on behalf of Williams in the underlying tort case.  The letter also stated that American Country's offer to retain Radzilowsky as independent counsel was conditioned on the following: Williams agreeing to drop his chancery action with prejudice; Radzilowsky submitting to American Country a curriculum vitae disclosing all of his jury trials that went to verdict involving claims for bodily injury; Radzilowsky providing American Country periodic progress reports including opinions and recommendations; and Radzilowsky discussing the retention of expert witnesses before incurring such expenses.  In an affidavit, Radzilowsky stated that he did not agree to American Country's offer because "American Country insisted on retaining a level of control over the representation which I felt would likely conflict with Mr. Williams' interests and objectives, and which were a substantial variance from the traditional role of independent counsel."

American Country then filed a second motion for summary judgment based on its counterclaim.  American Country also filed a motion to dismiss the declaratory action claiming that it was moot where American Country had agreed, by the letter dated January 25, 2001, to relinquish control of the underlying suit under certain conditions.

On June 29, 2001, the trial court granted American Country's motion for summary judgment as to the counterclaim and its motion to dismiss.  The court relied upon the holding in 
Savickas
.  In 
Savickas
, our supreme court held that a murder conviction collaterally estopped an insured from later contesting the applicability of the intentional acts exclusion of his policy.  As all the elements for collateral estoppel had been met, the trial court held that Williams was estopped from denying his conduct was intentional because of his criminal conviction.  Applying the holding in 
Savickas
 to the facts of this case, the trial court held that American Country had no duty to defend or indemnify Williams.

On July 21, 2001, Davila filed a motion to reconsider.  Williams did not file a motion to reconsider.  The trial court denied Davila's motion and he filed an appeal (No. 1-01-3642) which was assigned to this division.  

Also, on June 21, 2000, Yellow Cab filed a motion for summary judgment in the underlying suit contending that Williams was not Yellow Cab's agent at the time of the occurrence.  The trial court granted Yellow Cab's motion and Davila appealed to this court.  In an opinion, a different division of this court reversed the ruling of the trial court and remanded the case.  
Davila v. Yellow Cab Co.
, 333 Ill. App. 3d 592 (2002) (
Davila I
).  In 
Davila I
, this court held that the dispositive issue was not whether Williams acted intentionally but whether his intentional, negligent or criminal acts were performed within the scope of employment.  
Davila I
, 333 Ill. App. 3d at 600.  Therefore, because material questions of fact existed as to whether Williams was an employee or agent of Yellow Cab, the summary judgment ruling on the issue of agency was erroneous.

 
 In the present matter, this court affirmed the trial court's determination that our supreme court's holding in 
Savickas
 precluded Williams and Davila from contesting the fact that Williams' battery conviction established that his conduct in injuring Davila was intentional.  
American Country Insurance Co. v. Williams
, 339 Ill. App. 3d 835, 847 (2003).  However, we vacated the trial court's grant of summary judgment and remanded the case to the trial court to determine whether a conflict of interest was present and whether Williams was prejudiced by American Country's failure to pay for independent counsel to represent Williams.  
American Country Insurance Co.
, 339 Ill. App. 3d at 847.

On remand, attorneys from Madsen, Farkas & Powen, LLC, filed appearances for Williams and on July 15, 2003, filed a request for an evidentiary hearing to be held on the issues of conflict and prejudice as directed by this court.  American Country filed a motion to amend its counterclaim to add additional theories for relief, which the trial court granted on September 23, 2002.

On September 25, 2003, American Country filed its amended complaint alleging that: Williams' insurance policy provides no coverage for the incident based on the intentional acts exclusion in the policy; the insurance policy provides no coverage for the incident because the judgment of conviction against Williams is a conclusive determination that the claimed bodily injury of Davila was not caused by accident; and the insurance policy provides no coverage for the incident because the alleged injury sustained by Davila, as a result of the battery by Williams, did not arise out of the ownership, use or maintenance of the covered vehicle.  

On October 24, 2003, Williams and Davila filed motions for summary judgment arguing that there was a conflict of interest and Williams suffered prejudice as a result of the conflict.  Williams argued that American Country had a clear conflict of interest in its representation of Williams.  Williams noted that at the time of trial, American Country and Yellow Cab were both owned by Great Dane Holdings.  Williams argued that when American Country appointed Comfort to represent him, Comfort's actions and inactions revealed that he was protecting the interests of American Country and Yellow Cab rather than Williams.  Williams argued that it was in American Country's interest to establish that Williams was not an agent of Yellow Cab in order to shift liability and that Williams was prejudiced when Comfort denied that Williams was an agent of Yellow Cab and that there was any applicable insurance.  Davila argued that Williams suffered prejudice because American Country controlled his defense where it had a conflict of interest in representing Williams.  Davila also argued that American Country waived coverage defenses because it undertook the defense of Williams.

American Country responded to the motions for summary judgment, arguing that Williams was barred from asserting a conflict of interest as his complaint was dismissed by the trial court on June 29, 2001, and Williams had not appealed that dismissal.  American Country also argued that there was no conflict of interest in its representation of Williams and that Williams suffered no prejudice.  

On December 29, 2003, the trial court found that American Country had a conflict of interest when it assumed Williams' defense in the underlying case and that Williams was prejudiced as a result of the conflict.  Based on these findings, the trial court granted the motions for summary judgment; ordered American Country to provide independent counsel to Williams at American Country's expense; and held that American Country was estopped from asserting any coverage defenses in the underlying action.  The trial court did not explain its rationale.  American Country now appeals the trial court's judgment.  

Williams made a request to American Country that it retain Madsen, Farkas & Powen, LLC, to defend Williams in the underlying tort case.  American Country entered a retention agreement with Madsen, Farkas & Powen, LLC, in which American Country was obligated to pay all invoices within 14 days and Madsen, Farkas & Powen, LLC, agreed to reduce its hourly attorney fee to $150.  Madsen, Farkas & Powen, LLC, also provided a rough estimated budget of $40,000.

The underlying tort case settled on the first full day of trial.  Williams subsequently filed a petition for attorney fees and costs pursuant to section 155 of the Illinois Insurance Code (Code) (215 ILCS 5/155 (West 2002)).  Williams' petition sought the following attorney fees: $63,014.08 for fees and costs incurred by Madsen, Farkas & Powen, LLC, in defending the underlying tort action; $44,781.09 for fees and costs incurred by Madsen, Farkas & Powen, LLC, in prosecuting the chancery matter on Williams' behalf; $16,366.05 for fees and costs incurred by Radzilowsky in the underlying tort action; $26,524.07 for fees and costs incurred by Radzilowsky in prosecuting the chancery matter on Williams' behalf; $60,000 in statutory penalties; $2,000 in additional costs and fees anticipated through the conclusion of the declaratory judgment action; $6,080.35 in prejudgment interest on Radzilowsky's invoices; and $1,897.10 in prejudgment interest on the invoices of Madsen, Farkas & Powen, LLC, for a total of $220,662.74.

Williams argued that American Country's actions were vexatious and unreasonable where it defended Williams under a reservation of rights instead of filing a declaratory judgment action where American Country had a conflict of interest in representing Williams and where Williams was prejudiced by the conflict.  American Country filed a response arguing that an award of attorney fees was inappropriate where there was a 
bona fide
 dispute concerning coverage.  American Country asserted that it fulfilled its duties by defending Williams under a reservation of rights as required by the controlling law at the time.  American Country also argued that Williams' request for $60,000 in penalties was an 
ex post facto 
application of Public Act 93-485, (Pub. Act 93-485, § 5 (eff. January 1, 2004), which increased the maximum penalty effective on January 1, 2004. 

On June 29, 2004, the trial court granted Williams' petition and entered judgment against American Country in the amount of $150,000, which included $125,000 for attorney fees incurred in both the underlying tort action and the declaratory judgment action and $25,000 as a penalty for vexatious conduct, subject to a $7,500 setoff.  American Country appealed that judgment, and this court granted American Country's motion to consolidate its appeals from the trial court's orders entered on December 29, 2003, and June 29, 2004.              

On appeal, American Country contends that: (1) the trial court erred in finding as a matter of law that a conflict of interest existed between American Country and Williams; (2) the trial court erred in finding as a matter of law that Williams suffered prejudice from the alleged conflict of interest; and (3) the trial court erred in granting relief to Williams pursuant to section 155 of the Code.  For the following reasons, we affirm.

II. Analysis

American Country first contends that the trial court's order granting summary judgment in favor of Davila and Williams should be reversed where there was no actual conflict of interest in American Country's representation of Williams in the underlying tort case.  American Country specifically argues that the potential agency relationship between Yellow Cab and Williams did not present a conflict of interest where it has no impact on American Country's coverage defenses.  American Country also argues that the intentional acts exclusion in Williams' insurance policy did not present a conflict of interest in its representation of Williams where the underlying tort complaint alleged only negligence rather than battery or intentional conduct.  American Country maintains that it properly defended Williams pursuant to its reservation of rights and, when it became appropriate, it filed a declaratory judgment complaint.

Our review of the trial court's grant of summary judgment is 
de
 
novo
.  
Natale v. Gottlieb Memorial Hospital
, 314 Ill. App. 3d 885, 888 (2000).  Summary judgment is properly granted "'where the pleadings, affidavits, depositions, admissions, and exhibits on file, when viewed in the light most favorable to the nonmovant, reveal that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" 
Natale
, 314 Ill. App. 3d at 888, quoting 
Busch v. Graphic Color Corp.
, 169 Ill. 2d 325, 333 (1996).  The function of a reviewing court on appeal from a grant of summary judgment is limited to determining whether the trial court correctly concluded that no genuine issue of material fact was raised and, if none was raised, whether judgment as a matter of law was correctly entered.  
Malanowski v. Jabamoni
, 293 Ill. App. 3d 720, 724 (1997).

The insurance policy at issue conferred a duty upon American to defend Williams in the underlying action.  It provided, in relevant part:

"We have the right and duty to defend an 'insured' against a 'suit' asking for such damages.  However, we have no duty to defend any 'insured' against a 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply."

In Illinois an insurer is obligated to defend an action against an insured where the complaint contains allegations that  bring the claim actually or potentially within the policy.  
Konami (America), Inc. v. Hartford Insurance Co. of Illinois
, 326 Ill. App. 3d 874, 878 (2002). An exception to this general rule regarding the duty to defend exists where there is a conflict of interest between an insurer and the insured.  Instead of participating in the defense itself, the insurer must decline to defend and pay the costs of independent counsel for the insured.  
Illinois Masonic Medical Center v. Turegum Insurance Co.
, 168 Ill. App. 3d 158, 163 (1988). The test of whether a conflict exists is if, in comparing the allegations of the complaint to the terms of the policy, the insurer's interests would be furthered by providing a less than vigorous defense to the allegations.  
Illinois Masonic
, 168 Ill. App. 3d at 163.  The conflict confronting the attorney employed by the insurer may be resolved by full disclosure and consent from the parties.  
Nandorf, Inc. v. CNA Insurance Cos.
, 134 Ill. App. 3d 134, 137 (1985).

Williams argues that under 
Murphy v. Urso
, 88 Ill. 2d 444 (1981), a conflict of interest existed in this case where American Country was charged with providing a defense to both Yellow Cab and Williams, whose interests in how the underlying suit was to be defended were diametrically opposed.  We agree.

In 
Murphy
, a bus driver took a van after school hours for personal use and was involved in an accident that injured his passenger.  The passenger sued both the driver and the school that employed him, alleging negligence.  Our supreme court held that the insurance company, Travelers Insurance Company, had conflicts of interest that precluded it from defending under a reservation of rights.  The court found that a conflict of interest existed where the insurance company controlled both defenses for the school and bus driver.  The supreme court explained:

"To best defend the preschool, it would try to show that [the driver] did not have permission to use the bus at the time of the accident. *** This would sever any connection between the preschool and [the driver], place all the liability on [the driver], and exonerate the school.  But to best serve [the driver], Travelers had to try to show that he did have permission to use the bus.  This would spread the liability to the schools. ***

The interests of [the school] and [the driver] in how the suit was to be defended were diametrically opposed, creating an ethical conflict for Travelers, which was charged with providing a full and vigorous defense to each. [Citation.]  In order to defend either the schools or [the driver], Travelers had to resolve the conflict and pick a strategy of defense.  How could it do so for one without harming the other?"  
Murphy
, 88 Ill. 2d at 453.

Similarly, in this case, American Country was charged with providing a full and vigorous defense to both Williams and Yellow Cab, whose interests in how the underlying suit was defended were in opposition to each other.  In 
American Country
, 339 Ill. App. 3d at 845, this court previously recognized that such a conflict of interest could exist in this case.  This court noted that it would be in Williams' best interest to present a defense that he was an agent of Yellow Cab, while it would be in Yellow Cab's best interest to establish the exact opposite.  On remand, the trial court found that a conflict of interest did in fact exist in American Country's representation of Williams. We find that judgment was correctly entered where American Country was faced with a conflict and had to choose a strategy of defense in the underlying tort action.  

As this court previously held, Williams was estopped from further litigating whether his acts were intentional pursuant to our supreme court's holding in 
Savickas
 and the intentional acts exclusion of the policy applied in this case.  
American Country
, 338 Ill. App. 3d at 844.  Therefore, it was in Williams' best interest in the underlying action to argue that he was Yellow Cab's agent, which could spread the liability for his intentional conduct to Yellow Cab under the doctrine of 
respondeat superior
.  However, it was in Yellow Cab's interest to place the liability on Williams by arguing that he was not an agent or employee of Yellow Cab.  In fact, Yellow Cab filed a motion for summary judgment in the underlying tort action alleging that it had no liability for Williams' actions because Williams was not an employee or agent of Yellow Cab.  
The interests of Williams and Yellow Cab were thus diametrically opposed and presented American Country with an ethical conflict where it could not choose a defense strategy in the underlying action without harming either Williams or Yellow Cab.  

American Country argues that there is no conflict of interest arising out of the issue of agency where coverage either existed as to both defendants or coverage was excluded as to both defendants under the intentional acts exclusion of the policy.  

The language of the intentional acts exclusion in this case excludes coverage for "'Bodily injury' or 'property damage' expected or intended from the standpoint of the 'insured.'" In construing this policy provision we are mindful that insurance policies are to be liberally construed in favor of the insured and that all doubts and ambiguities must be resolved in favor of the insured.  
United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.
, 144 Ill. 2d 64 (1991).  Furthermore, where the language of an insurance policy is clear and unambiguous, it will be applied as written.  
State Farm Fire & Casualty Co. v. Hatherley
, 250 Ill. App. 3d 333, 337 (1993).

We therefore find that the language of this policy allows coverage to be excluded as to one insured and remain in effect as to the other insured.  While intentional conduct on the part of Williams could cause coverage to be excluded as to Williams, it would exclude coverage as to Yellow Cab only if Yellow Cab "expected or intended" the injury to Davila.  Therefore, contrary to American Country's claim, it could be liable for Williams' intentional conduct as the insurer for Yellow Cab if Williams is Yellow Cab's agent under the doctrine of 
respondeat superior
.  See 
Davila I
, 333 Ill. App. 3d at 600.  

While American Country cites several cases in support of its argument that coverage is excluded for both Williams and Yellow Cab under the intentional acts exclusion, we find his reliance on these cases unavailing.  American Country relies on 
Aetna Casualty & Surety Co. v. Dichtl
, 78 Ill. App. 3d 970 (1979) and 
Farmers Automobile Insurance Ass'n v. Medina
, 29 Ill. App. 3d 224 (1975).  However, both 
Aetna Casualty
 and 
Farmers Automobile
 address the issue of whether the insured's actions were intentional in order to invoke an exclusionary clause.  American Country's reliance on 
United States Fidelity & Guaranty Insurance Co. v. Jiffy Cab Co.
, 265 Ill. App. 3d 533 (1994), is also unavailing where this court addressed whether a taxicab driver's actions resulted from the ownership, maintenance or use of a covered vehicle.    

Accordingly, we affirm the trial court's order where an actual conflict of interest existed in this case, relieving American Country from control of Williams' defense.  The evidence in this case shows that American Country failed to disclose such conflict of interest to Williams, and absent such full disclosure and consent to representation, Williams was entitled to assume control of his defense in the underlying case and American Country was obligated to pay for independent counsel.  See 
Nandorf, Inc.
, 134 Ill. App. 3d at 137. 

We next address American Country's argument that the trial court's order should be reversed where Williams was unable to establish prejudice as a matter of law.

Whether an insured is prejudiced by an insurer's conduct in entering an appearance and assuming the defense of an action is a question of fact.  Prejudice will not be conclusively presumed from the mere entry of appearance and assumption of the defense.  
Maryland Casualty Co. v. Peppers
, 64 Ill. 2d 187, 196 (1976).  This court reviews the trial court's determination under the manifest weight of the evidence standard.  
Maryland Casualty Co.
, 64 Ill. 2d at 196.

The record shows that in his answer to plaintiff's complaint, Comfort, the attorney retained by American Country to represent Williams, denied that Williams was an agent of Yellow Cab even though doing so would ultimately relieve Yellow Cab of liability, leaving Williams to pay any judgment.  Similarly, Comfort drafted answers to interrogatories which also indicated that Williams was an independent contractor rather than an agent of Yellow Cab.  The underlying case was filed on May 12, 1998, and American Country did not offer to allow Williams to retain independent counsel until January 25, 2001.  During this nearly three-year period, American Country maintained control of Williams' defense despite a conflict of interest and had the opportunity to "mold" discovery in its behalf to the prejudice of Williams.  See 
Royal Insurance Co. v. Process Design Associates, Inc.
, 221 Ill. App. 3d 966, 976 (1991).  We therefore find that the trial court's finding of prejudice was not contrary to the manifest weight of the evidence.      

    We lastly consider American Country's contention that the trial court erroneously awarded attorney fees pursuant to section 155 of the Code.

Section 155 of the Code provides in pertinent part:

"(1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance *** and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

***

(b) $60,000."  215 ILCS 5/155(1)(b) (West 2004), as amended by Pub. Act 93-485, § 5 (eff. January 1, 2004)).

Section 155 was enacted by the legislature " 'to provide a remedy to an insured who encounters unnecessary difficulties when an insurer withholds policy benefits.' "  
McGee v. State Farm Fire & Casualty Co.
, 315 Ill. App. 3d 673, 680-81 (2000), quoting 
Richardson v. Illinois Power Co.
, 217 Ill. App. 3d 708, 711 (1991).  The attorney fees, costs, and limited penalty provisions of section 155 are an extracontractual remedy intended to make suits by policyholders economically feasible and punish insurance companies for misconduct.  
McGee
, 315 Ill. App. 3d at 681.

The key question in a section 155 claim is whether an insurer's conduct is vexatious and unreasonable.  
Buais v. Safeway Insurance Co.
, 275 Ill. App. 3d 587, 591 (1995).  Whether an insurer's conduct is vexatious and unreasonable is a matter committed to the trial court's discretion, and that determination will not be reversed on appeal absent an abuse of that discretion.  
McGee
, 315 Ill. App. 3d at 681.  A trial court must consider the totality of the circumstances including the insurer's attitude, whether the insured was forced to sue to recover, and whether the insured was deprived of the use of his property.  
McGee
, 315 Ill. App. 3d at 681. 

We find that the trial court's determination that Williams was entitled to attorney fees and costs based on American Country's conduct did not constitute an abuse of discretion.  The record supports the trial court's finding where American Country failed to notify Williams regarding the conflict of interest and controlled Williams' defense in the underlying tort case for nearly three years despite the existence of a conflict and Williams' efforts to obtain new counsel.

After considering the factors in 
Mobil Oil Corp. v. Maryland Casualty Co.
, 288 Ill. App. 3d 743, 752 (1997), and reviewing the affidavits submitted by Williams' attorneys, we further find that the attorney fees and costs submitted to the circuit court are reasonable.  In 
Mobile Oil Corp.
, this court noted that the circuit court must consider several factors when calculating reasonable attorney fees, including: the time and labor required, the novelty and difficulty of the issues, the skill required, the preclusion of other employment necessary to accept the case, the customary fee charged in the community, the amount of money involved in the case, the results obtained, and the attorney's reputation, experience, and ability.  
Mobile Oil Corp.
, 288 Ill. App. 3d at 752.  The affidavits submitted to the trial court in this case are well documented.  The attorneys set forth the work performed, the precise number of hours spent and the billing rates for the attorneys involved in the litigation.  The record does not contain a response to Williams' amended petition for attorney fees and costs.  Also, American Country did not request a separate hearing regarding the reasonableness of the fees, nor did it present any affidavits or other evidence to oppose Williams' evidence concerning attorney fees and costs.  

We also reject American Country's contention that the trial court was required to conduct a separate evidentiary hearing to evaluate the factors to determine the reasonableness of the attorneys fees.  The trial court presided over this matter for more than four years and had before it the parties' briefs and Williams' petition for attorney fees, as well as affidavits submitted by Williams' attorneys detailing their involvement in his representation.  American Country fails to show what evidence the trial court was lacking when it made a determination regarding Williams' petition pursuant to section 155.

III. Conclusion

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.  We deny Williams' request for attorney fees incurred on appeal.  

Affirmed.

REID, P.J., and GREIMAN, J., concur.