2022 IL App (1st) 200695

No. 1-20-0695, 1-20-0731 (cons.)

Order filed June 27, 2022

First Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| COUNTRY MUTUAL INSURANCE COMPANY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff and Counterdefendant-Appellee and | ) | Cook County, Illinois. |
| Cross-Appellant, | ) | |
| | ) | |
| v. | ) | No. 05 CH 2618 |
| | ) | |
| THOMAS OLSAK; JOSEPH PECORARO; FREMD | ) | |
| SCHOOL HOCKEY CLUB; and JAMES W. | ) | Honorable |
| BALKONIS, FRANK BISKNER, WILLIAM D. | ) | Michael T. Mullen |
| DeGIRONEMO, JAMES LAPETINA, KENNETH J. | ) | Judge Presiding. |
| NORDGREN, EDWARD J. PUDLO, AND | ) | |
| MATTHEW M. SPRENZEL, as Members of the | ) | |
| Board of Governors of the Fremd High School | ) | |
| Hockey Club, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| (Thomas Olsak, Individually, and as the Assignor of | ) | |
| His Claims, Demands and Causes of Action to Joseph | ) | |
| Pecoraro, and Joseph Pecoraro, as the Assignee under | ) | |
| a Certain Settlement Agreement Dated June 26, | ) | |
| 2006,Defendants and Counterplaintiffs-Appellants | ) | |
| and Cross-Appellees). | ) | |

_____

JUSTICE WALKER delivered the judgment of the court, with opinion.
Presiding Justice Hyman and Justice Coghlan concurred in the judgment and opinion.

**OPINION**

¶ 1    In 1998, Thomas Olsak struck Joseph Pecoraro in the head, causing him to suffer a severe head injury. Pecoraro filed suit naming, *inter alia*, Olsak and Ed Pudlo, Olsak's stepfather, as defendants. At the time of the incident, Pudlo had two insurance policies in effect with Country Mutual Insurance Company. Country Mutual tendered a defense to Pudlo but did not defend Olsak due to the allegations of intentional conduct.

¶ 2    In 2005, Country Mutual filed the instant action, a complaint for declaratory judgment, seeking a finding that it was under no obligation to defend or indemnify Olsak in connection with Pecoraro's claim of injury. In 2006, Pecoraro and Olsak entered into a settlement agreement, whereby Olsak assigned to Pecoraro his rights under the Country Mutual policies in exchange for a release and discharge from all claims arising from the 1998 incident. In 2007, Olsak and Pecoraro filed a counterclaim, asserting, *inter alia*, that Country Mutual breached its duty to defend Olsak and that its failure to defend Olsak was vexatious and unreasonable under section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2006)).

¶ 3    Olsak and Pecoraro modified the 2006 agreement to include a settlement amount of $6 million in 2010. This court remanded the case for a reasonableness hearing regarding the 2010 agreement pursuant to the holding in *Guillen v. Potomac Insurance Co. of Illinois*, 203 Ill. 2d 141 (2003). See *Country Mutual Insurance Co. v. Olsak*, 2014 IL App (1st) 121063-U. On remand, the circuit court found that the 2010 modified agreement was not the product of collusion, was supported by consideration, and was reasonable; but the circuit court also found that Country Mutual's total liability could not exceed its $3 million policy limits, and it entered judgment against Country Mutual for $3 million, instead of the $6 million settlement amount. Finally, the circuit

court did not award section 155 damages, finding that Country Mutual's conduct was not vexatious or unreasonable. In this consolidated appeal, Olsak and Pecoraro and Country Mutual appealed the judgment of the circuit court. For the following reasons, we affirm.

¶ 4                                    I. BACKGROUND

¶ 5     On October 21, 1998, Olsak was a 17-year-old member of the Fremd High School Hockey Club (Fremd), and Pecoraro was the head coach of the team. On that date, Olsak struck Pecoraro, who fell to the floor unconscious, striking his head. Olsak was charged with and pleaded guilty to battery.

¶ 6     Pecoraro filed a complaint against Olsak on October 13, 2000. The complaint contained a single count for battery and named Pudlo, Fremd, and the individual members of the board of governors of Fremd as respondents in discovery. On July 19, 2001, the respondents in discovery were converted to defendants.

¶ 7     In count I of his second amended complaint, Pecoraro alleged assault and battery against Olsak. Pecoraro alleged that Olsak, while standing behind him, struck him in the head with a closed fist "without legal justification and with malicious intent to seriously injure." Pecoraro claimed he suffered permanent brain damage, including the loss of certain sensory and cognitive functions. He further alleged that Olsak did not act in self-defense. Count II alleged negligence on the part of Fremd and its individual board members, of which Pudlo was a member. Count III alleged negligent parental supervision against Pudlo.

¶ 8     At the time of the incident, Pudlo and Desiree Pudlo, Olsak's mother, (collectively "the Pudlos") had in effect with Country Mutual a homeowners insurance policy and a personal and

professional umbrella liability policy. The homeowner's policy had maximum liability limits of $1 million and the umbrella policy had maximum liability limits of $2 million.

¶ 9     The homeowner's policy defined the "insured" to mean "you and the following residents of your household: 1. your relatives; and 2. persons under 21 in the care of those named above." The policy promised to "pay on behalf of an insured for damages caused by an occurrence resulting from bodily injury or property damage caused by an occurrence, if the insured is legally obligated." The policy defined an "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Additionally, the policy specifically excluded bodily injury or property damage "caused intentionally by or at the direction of an insured."

¶ 10    The umbrella policy defined "insured" as the named insured and "any relative or, if residents of the named insured's household, any other person under the age of twenty-one in the care of the named insured." The policy provided that Country Mutual "agrees to indemnify the insured for ultimate net loss in excess of the retained limit which the insured shall become legally obligated to pay *** as damages because of personal injury or property damage." It defined "personal injury" as "assault and battery not committed by or at the direction of the insured, unless committed *** for the purpose of protecting persons or property, including death resulting therefrom, sustained by any person." Coverage was excluded for "any act committed by or at the direction of the insured with intent to cause personal injury or property damage."

¶ 11    Pudlo tendered his defense to Country Mutual, and Country Mutual hired the firm of Chilton, Yambert, Porter & Young (the "Chilton Yambert Law Firm") to represent Pudlo individually as to count III of Pecoraro's amended complaint. TIG Insurance, Fremd's insurer,

hired an attorney to represent the board members. Pudlo also tendered the defense of Olsak to Country Mutual, but Country Mutual denied Olsak coverage due to the allegations of intentional conduct.

¶ 12    On November 8, 2000, Neal Napolitano, assistant general counsel for Country Mutual, sent a denial of coverage and denial of defense letter to Olsak at the Pudlo's home address. The letter explained that coverage was denied on the basis that the allegations of the underlying complaint did not fall under the policies' definition of "occurrence" and that the intentional-acts exclusion applied. Following its denial of coverage to Olsak, Country Mutual neither defended Olsak under a reservation of rights, nor did it initially file a declaratory judgment action.

¶ 13    The Pudlos then independently retained the Chilton Yambert Law Firm to represent Olsak. The Chilton Yambert Law Firm advised Country Mutual that Olsak had retained the firm. Country Mutual did not approve or disapprove of the representation. The Chilton Yambert Law Firm, on behalf of Olsak, answered the second amended complaint and filed affirmative defenses.

¶ 14    The circuit court dismissed count III against Pudlo with prejudice on March 13, 2002, but Pudlo remained a defendant under the negligence count as a board member.

¶ 15    On April 18, 2003, Fremd and the individual board members filed a cross-claim against Olsak seeking contribution. The Chilton Yambert law firm notified the Pudlos of an estimate of fees for the balance of the case to represent Olsak. Pudlo then instructed the Chilton Yambert Law Firm not to defend the case, but to only "monitor" it and refrain from attending depositions, including medical depositions.

¶ 16    In June 2003, Olsak filed an affirmative defense alleging Pecoraro approached Olsak, who "felt threatened and perceived imminent harm."

¶ 17      On February 4, 2004, Country Mutual retained Attorney Robert Shipley to represent Pudlo as a board member and to monitor the case. On May 11, Shipley filed a general appearance for Pudlo in the underlying action.

¶ 18      The Chilton Yambert Law Firm filed a motion to withdraw as Olsak's counsel on July 7, 2004, and the motion was granted on October 8, 2004. Olsak then represented himself in the underlying litigation from October 2004 until June 2006, when he reached a settlement with Pecoraro.

¶ 19      On February 9, 2005, Country Mutual filed the instant action, a complaint for declaratory judgment naming, *inter alia*, Olsak and Pecoraro as defendants. Country Mutual sought a declaratory judgment that it was under no obligation to defend or indemnify Olsak in connection with the underlying litigation or the counterclaim brought by Fremd and the board members. Country Mutual asserted that, due to Olsak's intentional acts, neither the homeowner's policy, nor the umbrella policy covered the damages, and any injuries Pecoraro sustained are specifically excluded from coverage.

¶ 20      Stuart Kusper of Katten Muchin Rosenman, LLP, appeared for Olsak in the declaratory judgment claim, and the circuit court dismissed all the individual board member defendants, *sua sponte*, in the underlying litigation.

¶ 21      Olsak and Pecoraro settled the assault and battery suit by entering into a written settlement agreement (2006 settlement). The agreement stated that Olsak did not have "any substantial assets with which to pay any judgment or settlement" to Pecoraro, but that Olsak had potential claims against Country Mutual for denying him a defense and against TIG, Fremd's insurer. Pursuant to the agreement, Olsak assigned to Pecoraro his rights under the Country Mutual policies and the

policy issued by TIG to Fremd. Olsak agreed to pay Pecoraro $5000, and in exchange, Pecoraro agreed to release and discharge Olsak from all claims arising from the 1998 incident. The agreement further provided that Pecoraro would be entitled to seek reinstatement of his claim against Olsak, if Olsak breached the agreement. The 2006 settlement contemplated that the amount of Pecoraro's damages would be determined in the future by a hearing in accord with *Guillen*. Kusper represented Olsak in the negotiation of the 2006 settlement.

¶ 22      On August 28, 2006, the circuit court found that the parties had reached the 2006 settlement in good faith and dismissed Pecoraro's claim against Olsak. Fremd appealed the court's finding that the 2006 settlement was reached in good faith by asserting that the settlement amount was inadequate. This court held that the circuit court did not abuse its discretion when it found the agreement was in good faith. *Pecoraro v. Balkonis*, 383 Ill. App. 3d 1028, 1039 (2008).

¶ 23      After the settlement, Pecoraro's attorneys, Norman Lerum and James Messineo, assumed Olsak's representation. Subsequently, Olsak and Pecoraro filed an answer and second amended affirmative defenses to Country Mutual's declaratory judgment claim.

¶ 24      On March 9, 2007, Olsak and Pecoraro filed a three-count counterclaim against Country Mutual. In counts I and II of the counterclaim, they asserted, *inter alia*, that Country Mutual breached its duty to defend Olsak in the underlying action by failing to disclose to Olsak the conflict of interest between Olsak and Pudlo and by failing to advise Olsak that he could retain independent counsel at Country Mutual's expense. They further asserted that Country Mutual was estopped from raising any policy defenses that it might otherwise have had due to its conduct. Olsak and Pecoraro requested an evidentiary hearing as to the amount of damages Pecoraro was entitled to receive for his injuries and requested judgment in favor of Pecoraro and against Country

Mutual for compensatory and punitive damages. Count III alleged that Country Mutual's conduct in failing to defend Olsak or advise him of the conflict of interest was vexatious and unreasonable and requested attorney fees and costs pursuant to section 155 of the Insurance Code.

¶ 25 Country Mutual filed a motion for summary judgment on its complaint for declaratory judgment, a motion to dismiss the second amended affirmative defenses, and a motion for summary judgment on the counterclaim. On June 13, 2007, the circuit court granted summary judgment in favor of Country Mutual on its declaratory judgment claim and dismissed with prejudice the second amended affirmative defenses. On August 1, 2007, the circuit court granted summary judgment in favor of Country Mutual on the counterclaim, finding that Country Mutual did not have a duty to defend or indemnify Olsak.

¶ 26 Olsak and Pecoraro appealed the circuit court's judgment. asserting that the joint defense of Olsak and Pecoraro presented Country Mutual with a conflict of interest and Country Mutual should have obtained independent counsel to defend Olsak.

¶ 27 This court found that its analysis suggested a conflict of interest existed between Olsak and Pudlo and reversed the circuit court's judgment because the interests of Olsak and Pudlo were diametrically opposed in the underlying action. The court also found that Country Mutual failed to disclose to Olsak the existence of the potential conflict. *Country Mutual Insurance Co. v. Olsak*, 391 Ill. App. 3d 295, 307 (2009) (*Olsak I*). In *Olsak I*, this court also determined that Country Mutual had a duty to defend Olsak in the underlying action because the allegations in the complaint revealed a potential for coverage. *Id.* The court concluded that the circuit court erred in granting summary judgment on the declaratory judgment claim and counterclaim and erred in dismissing the second amended affirmative defenses with prejudice. The matter was remanded for a final

determination of whether a conflict of interest existed between Olsak and Pudlo and whether Olsak was prejudiced by Country Mutual's failure to retain independent counsel to represent him. On remand, Country Mutual raised a collateral argument that the 2006 settlement was unenforceable as it was without a specific settlement amount.

¶ 28    On June 26, 2009, counsel for Pecoraro advised counsel for Country Mutual that all the pending matters involving Country Mutual and its insureds, Olsak and Pudlo, could be resolved for payment of the policy limits of $3 million. Country Mutual's response letter, drafted by its attorney on August 14, 2009, refused to settle for any amount or engage in settlement discussions. Country Mutual maintained that it had no duty to defend, denied *Olsak I* found there were conflicts of interest faced by Country Mutual, and denied that Pecoraro suffered a serious brain injury.

¶ 29    On May 31, 2010, Olsak and Pecoraro executed a modification to the 2006 settlement (2010 amended settlement). In the 2010 amended settlement, the parties stated that Olsak had not satisfied the $5000 payment as required by the terms of the 2006 settlement. As of the date of the 2010 amended settlement, Olsak had only paid $1500 of the $5000 obligation. Olsak agreed to pay Pecoraro $6 million for Pecoraro's injuries in exchange for a reaffirmation of the release provided in the 2006 settlement and the forbearance by Pecoraro of his rights against Olsak arising from his default on the $5000 payment. Pecoraro claimed a loss of smell, taste, and vision in the lateral vertical hemisphere of his left eye. He also claimed persistent neck pain, persistent headaches, diminished ability to concentrate, and other cognitive impairments. The parties agreed that the $6 million payment would be satisfied through the assignment of Olsak's rights under the relevant policies issued by Country Mutual and TIG, as set forth in the 2006 settlement.

¶ 30 On June 16, 2010, Olsak and Pecoraro filed a motion requesting a finding that the 2010 amended settlement was reasonable and consistent with the holding in *Guillen*. TIG and Country Mutual filed a motion to dismiss, asserting that the circuit court did not have subject matter jurisdiction over the request for a finding of reasonableness because the August 28, 2006 "good faith" order dismissing Pecoraro's claim against Olsak pursuant to the original settlement agreement was a final order that could no longer be vacated or modified. The circuit court granted the motion to dismiss, finding that the order dismissing Pecoraro's underlying claim against Olsak was a final order and that the circuit court, and therefore, lacked subject matter jurisdiction over the request for a finding that the 2010 amended settlement was reasonable.

¶ 31 Beginning on January 9, 2012, the circuit court held a hearing to determine whether a conflict of interest existed between Olsak and Pecoraro. At the hearing, Jon Yambert, an attorney at the Chilton Yambert Law Firm, testified via an evidence deposition. Yambert testified that on December 14, 2000, he sent a letter to the Pudlos. The letter stated, "I perceive that there are and will be some conflicts of interest in this case." Further, he states,

"There are some potential problems which I perceive in my representing Mr. and Mrs. Pudlo and Thomas Olsak. In the event that my representation of Mr. Olsak makes my position untenable with respect to the representation of Mr. and Mrs. Pudlo, I will withdraw from representation of Mr. Thomas Olsak."

On February 6, 2001, Yambert filed an appearance on Olsak's behalf, and in October 2001, he filed an appearance on Pudlo's behalf. Yambert also testified that his firm represented Pudlo only as to count III of Pecoraro's complaint, the claim against Pudlo as an individual for failing to control or supervise Olsak, and his representation of Pudlo ended on March 13, 2002, when the

court dismissed that claim. Yambert further testified that his firm's representation of Olsak did not occur at the request of Country Mutual, and he did not believe his firm was ever paid for its representation of Olsak.

¶ 32    Shipley testified that he was retained by Country Mutual to represent Pudlo in his capacity as a board member and to monitor the case. Shipley filed an appearance on behalf of Pudlo on May 11, 2004, but did not take part in drafting any motions to dismiss the claims against the individual members of the Board, never received any instructions from Country Mutual as to arguments to be made on behalf of Pudlo, and never gave Pudlo any legal advice. On cross-examination, Shipley stated that he attended the circuit court hearing as to whether the 2006 settlement between Olsak and Pecoraro was reached in good faith and argued against such a finding at that proceeding.

¶ 33    On March 16, 2012, the circuit court dismissed the declaratory judgment claim filed by Country Mutual as moot and granted a $5000 judgment in favor of Olsak and Pecoraro on their counterclaim. The court found that a conflict of interest existed between the defenses of Olsak and Pudlo during the period in which Country Mutual retained Shipley to monitor the litigation on Pudlo's behalf. The court also found that Olsak was prejudiced by Country Mutual's failure to appoint counsel to represent him to the extent he was required to settle with Pecoraro for $5000. Olsak and Pecoraro appealed.

¶ 34    In 2014, this court considered whether the circuit court erred by awarding Olsak and Pecoraro only $5000 in damages on their counterclaim. *Olsak*, 2014 IL App (1st) 121063-U (*Olsak II*). Olsak and Pecoraro argued that Country Mutual was liable to Pecoraro for reasonable compensatory damages arising from the underlying claim pursuant to the 2006 settlement

agreement and the 2010 amended settlement because Country Mutual breached its duty to defend Olsak. Country Mutual responded that the most it could be required to pay Pecoraro for breaching its duty to defend is the $5000 Olsak was required to pay Pecoraro under the 2006 settlement.

¶ 35    In *Olsak II*, this court reversed the circuit court's decision to award Pecoraro $5000 and the circuit court's March 8, 2011, order dismissing the motion filed by Olsak and Pecoraro for a finding of reasonableness as to the 2010 amended settlement. The court again remanded the matter for a reasonableness hearing of the agreement, as set forth in *Guillen*, and for a hearing to determine the amount of damages Pecoraro was entitled on the counterclaim, considering the circuit court's ruling as to the reasonableness of the 2010 amended settlement. Finally, the court remanded for a ruling on count III of the counterclaim, in which Pecoraro requested an award of attorney fees and costs under section 155 of the Insurance Code, to be made when the court determines the amount of damages to award Pecoraro on the counterclaim.

¶ 36    Fremd remained a defendant in the underlying action, which was stayed pending resolution of the coverage actions in this case and a companion action filed by Olsak and Pecoraro against TIG. In September 2017, the circuit court dismissed TIG from the underlying action, pursuant to a settlement agreement between Pecoraro and TIG.

¶ 37    The circuit court entered an order clarifying the scope of the *Guillen* hearing and addressing issues related to the use of discovery depositions and evidence depositions taken in the underlying cause. The court ruled that (1) evidence of Pecoraro's condition since the day of the 2010 amended settlement was not relevant and must be barred, (2) discovery and evidence depositions available to the parties prior to the 2010 amended settlement bear on the reasonableness of the settlement and may be used as substantive evidence for purposes of showing what the parties and counsel

believed about Pecoraro's injuries, condition, and treatment, but (3) the depositions may not be used as substantive evidence of Pecoraro's injuries, condition, and treatment.

¶ 38 Country Mutual filed a motion to set the maximum limit of any potential recovery by Pecoraro to the policy limits of $3 million. Country Mutual also filed a motion for an independent medical examination of Pecoraro to determine whether his injuries were permanent. Country Mutual argued that the reasonableness of the 2010 amended settlement would depend on the nature and extent of Pecoraro's claimed injuries and that Pecoraro put his condition at issue by claiming the loss of smell, taste, and vision; persistent neck pain; persistent headaches; diminished ability to concentrate; and other cognitive impairments. On July 19, 2016, the circuit court denied both motions. The court found that Pecoraro's current physical and/or mental condition was not in controversy.

¶ 39 The combined trial and reasonableness hearing commenced on September 23, 2019, and the parties presented testimony from 18 witnesses. The circuit court also received into evidence 11 evidence depositions, admitted numerous exhibits at the request of the parties, and heard testimony from various witnesses relative to the significance of certain exhibits.

¶ 40 The circuit court entered judgment on April 29, 2020, and it ordered Country Mutual to pay its $3 million policy limits to Pecoraro. The court found the 2010 amended settlement was not the product of collusion, was supported by consideration, and was reasonable both with respect to Olsak's decision to settle and the $6 million settlement amount. The court also found that Country Mutual did not violate section 155 of the Insurance Code and denied Olsak's and Pecoraro's request for attorneys' fees and expenses.

¶ 41    On May 28, 2020, Country Mutual filed a post-trial motion seeking a modification of the judgment. Country Mutual argued that TIG's settlement with Pecoraro should act as a setoff on any judgment against Country Mutual, except an award under section 155. Country Mutual argued that the $3 million award should be reduced by the $750,000 settlement with TIG. On August 3, 2020, the circuit court denied the motion.

¶ 42    This timely appeal followed.

¶ 43                                    II. ANALYSIS

¶ 44    On appeal, Country Mutual argues that (1) the circuit court's finding of reasonableness as to the 2010 amended settlement agreement was against the manifest weight of the evidence, (2) the circuit court deprived Country Mutual of a fair trial by precluding Country Mutual from presenting evidence bearing on the reasonableness of the 2010 amended settlement through an independent medical examination of Pecoraro, and (3) the circuit court failed to grant Country Mutual the setoff based on Pecoraro's settlement with TIG. Country Mutual asks this court to reverse the judgment entered in favor of Pecoraro or grant Country Mutual a new trial. Alternatively, Country Mutual asks this court to reverse the circuit court's denial of a setoff to Country Mutual.

¶ 45    In their appeal, Olsak and Pecoraro argue that (1) the circuit court erred by not entering judgment on counts I and II of the counterclaim in the amount of $6 million, (2) the circuit court deviated from its remand jurisdiction by entering an order that Country Mutual's liability was limited to the policy limits of $3 million, (3) the circuit court erred by denying Pecoraro's motion *in limine* that sought to bar any argument by Country Mutual that its liability was capped by the coverage limits contained in its two insurance policies, (4) the circuit court erred as a matter of law when it found that Country Mutual's conduct did not constitute bad faith claims practices

under section 155 of the Insurance Code, and (5) the circuit court's finding that Country Mutual's conduct did not constitute bad faith claims practices under section 155 of the Insurance Code was against the manifest weight of the evidence.

¶ 46                                    A. Country Mutual's Appeal

¶ 47    Country Mutual first argues that the circuit court erred in finding the 2010 amended settlement reasonable. A reviewing court defers to the circuit court's findings of fact unless they are against the manifest weight of the evidence. *Eychaner v. Gross*, 202 Ill. 2d 228, 251 (2002). "A decision is against the manifest weight of the evidence only when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence." *Id.* at 252. We apply a *de novo* standard of review to the circuit court's conclusions of law. *Id.*

¶ 48    In 2014, this court remanded for a reasonableness hearing of the 2010 amended settlement pursuant to *Guillen*. In *Guillen*, our supreme court held that, when an insurer breaches its duty to defend its insured and the insured reaches a settlement agreement with the plaintiff in the underlying action, the insurer is legally obligated to indemnify the insured and must pay the settlement amount so long as the plaintiff can establish that the settlement was reasonable. *Guillen*, 203 Ill. 2d at 161-63. The *Guillen* court set forth two inquiries courts should consider when determining the reasonableness of a settlement agreement under these circumstances: (1) whether the insured's decision to settle was reasonable and (2) whether the settlement amount was reasonable. *Id.* at 163. The insured has the burden of proving reasonableness while the insurer retains the right to rebut any preliminary showing of reasonableness with its own affirmative evidence bearing on the reasonableness of the settlement agreement. *Id.* at 163-64.

¶ 49 With respect to the insured's decision to settle, "the litmus test must be whether, considering the totality of the circumstances, the insured's decision 'conformed to the standard of a prudent uninsured.' " (Emphasis omitted.) *Id.* at 163 (quoting *Rhodes v. Chicago Insurance Co.*, 719 F.2d 116, 120 (5th Cir. 1983)). "Similarly, with respect to the amount of damages agreed to, the test 'is what a reasonably prudent person in the position of the [insured] would have settled for on the merits of plaintiff's claim.' " *Id.* (quoting *Miller v. Shugart*, 316 N.W.2d 729, 735 (Minn. 1982)). Courts should take a "commonsense consideration of the totality of 'facts bearing on the liability and damage aspects of plaintiff's claim, as well as the risks of going to trial.' " *Id.* (quoting *Miller*, 316 N.W.2d at 735).

¶ 50 Country Mutual's primary argument is that the 2010 amended settlement was unreasonable because Lerum and Messineo represented both Olsak and Pecoraro during the settlement negotiations. Country Mutual argues that the joint representation made the modified agreement inherently collusive because counsel for Pecoraro simply negotiated between themselves to arrive at a settlement amount greater than the available insurance coverage. Moreover, without an adversarial relationship, Olsak was not given a contrary view of the medical evidence that could have affected his decision to enter the agreement or agree to the $6 million settlement amount. Country Mutual argues that rather than working with Olsak to minimize his exposure and assess viable defenses, Lerum and Messineo instead worked to maximize Pecoraro's recovery against Country Mutual.

¶ 51 Olsak and Pecoraro do not dispute that Lerum and Messineo represented both parties during negotiations for the 2010 amended settlement. It is undisputed that Lerum and Messineo assumed Olsak's representation following the 2006 settlement and there is no evidence indicating

that their representation of Olsak ever ended. Therefore, assuming Lerum and Messineo indeed represented both Olsak and Pecoraro during negotiations for the 2010 amended settlement, the issue is whether the agreement was reasonable under these circumstances.

¶ 52   A settlement may be deemed unreasonable if there is evidence of bad faith, fraud, or collusion. *Central Mutual Insurance Co. v. Tracy's Treasures, Inc.*, 2014 IL App (1st) 123339, ¶ 79. A settlement "becomes collusive when the purpose is to injure the interests of an absent or nonparticipating party, such as an insurer or nonsettling defendant." (Internal quotation marks omitted.) *Id.* ¶ 80. Among the indicators of collusion are concealment, secretiveness, lack of serious negotiations on damages, attempts to affect the insurance coverage, profit to the insured, and attempts to harm the insurer's interests. *Id.* "Collusion occurs when 'the insured and a third party claimant work together to *** inflate the third party's recovery to artificially increase damages flowing from the insurer's breach' of the duty to defend." *Id.* ¶ 81 (quoting *Safeco Insurance Co. of America v. Parks*, 88 Cal. Rptr. 3d 730, 748 (Ct. App. 2009)). Relevant factors to a determination of whether a settlement is collusive include (1) the amount of the overall settlement in light of the value of the case, (2) a comparison with awards or verdicts in similar cases involving similar injuries, (3) facts known to the settling insured at the time of the settlement, (4) the presence of a covenant not to execute as part of the settlement, and (5) the failure of the settling insured to consider viable available defenses. *Id.*

¶ 53   The joint representation of Olsak and Pecoraro was an obvious conflict of interest. Courts acknowledge that an insured and a third-party claimant establishing a settlement amount that an insurer is obligated to pay creates the possibility of collusion. *Id.* ¶ 80; *Guillen*, 203 Ill. 2d at 163. Having both sides share counsel during negotiations for that settlement naturally heightens that

possibility. These facts are troubling and represent a stunning lack of judgment, especially considering that Olsak's and Pecoraro's counterclaim stem from Country Mutual's earlier conflict of interest, but this court cannot identify relevant authority finding joint representation alone to be dispositive on the issue of collusion.

¶ 54 In this case, the totality of the circumstances surrounding the creation of the 2010 amended settlement does not demonstrate that Olsak and Pecoraro set out to artificially inflate Pecoraro's recovery against Country Mutual. Olsak and Pecoraro did not establish a dollar amount in the 2006 agreement, but instead agreed to be bound by a later determination from a court or jury. This action does not demonstrate a plan or concerted effort to inflate the settlement amount. On the contrary, leaving the determination of Pecoraro's damages to a neutral factfinder demonstrates an attempt to have a fair and reasonable outcome. Likewise, their decision to modify the original agreement was not the result of collusion but, instead, was prompted by Country Mutual's argument that the 2006 settlement was invalid for lacking a specific dollar amount.

¶ 55 Country Mutual then argues that the 2010 amended settlement lacked consideration under the preexisting duty rule and was based on illusory promises. Specifically, Country Mutual insists that Pecoraro did not have any right to reinstate and pursue his personal injury suit against Olsak.

¶ 56 "A settlement agreement is in the nature of a contract and is governed by principles of contract law." *K4 Enterprises, Inc. v. Grater, Inc.*, 394 Ill. App. 3d 307, 313 (2009). The construction of a contract presents a question of law for which the standard of review is *de novo*. *Gallagher v. Lenart*, 226 Ill. 2d 208, 219 (2007). "The primary objective in construing a contract is to give effect to the intent of the parties." *Id.* at 232. "A court must initially look to the language

of a contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent." *Id.* at 233.

¶ 57    Modification of a contract must satisfy the same elements for a valid contract (offer, acceptance, and consideration) and preexisting obligations do not suffice for consideration. *All American Roofing, Inc. v. Zurich American Insurance Co.*, 404 Ill. App. 3d 438, 449-50 (2010). Consideration is the " 'bargained-for exchange of promises or performances, and may consist of a promise, an act or a forbearance.' " *Carter v. SSC Odin Operating Co.*, 2012 IL 113204, ¶ 23 (quoting *McInerney v. Charter Golf, Inc.*, 176 Ill. 2d 482, 487 (1997)). Valid consideration must exist on the part of both parties. *Marque Medicos Fullerton, LLC v. Zurich American Insurance Co.*, 2017 IL App (1st) 160756, ¶ 65. " 'Any act or promise which is of benefit to one party or disadvantage to the other is a sufficient consideration to support a contract.' " *Carter*, 2012 IL 113204, ¶ 23 (quoting *Steinberg v. Chicago Medical School*, 69 Ill. 2d 320, 330 (1977)). "It is well settled that valid consideration exists for a release when a party promises not to file suit against another party in exchange for payment." *Rohr Burg Motors, Inc. v. Kulbarsh*, 2014 IL App (1st) 131664, ¶ 49. Although some consideration is necessary, " '[a] court's inquiry into whether a contract is supported by consideration does not extend to examining the adequacy of the consideration.' " (Internal quotation marks omitted.) *Id.* ¶ 48 (quoting *Hurd v. Wildman, Harrold, Allen & Dixon*, 303 Ill. App. 3d 84, 93, (1999). " 'It is not [the] court's function to review the amount of consideration unless the amount is so grossly inadequate as to shock the conscience' " of the court. *Id.* (quoting Hurd, 303 Ill. App. 3d at 93). Thus, " '[m]ere inadequacy of consideration, in the absence of fraud or unconscionable advantage, ordinarily is insufficient to justify setting aside a contract.' " *Id.* (quoting *Hurd*, 303 Ill. App. 3d at 93).

¶ 58    " 'The preexisting duty rule provides that where a party does what it is already legally obligated to do, there is no consideration as there is no detriment.' " *Marque Medicos Fullerton, LLC*, 2017 IL App (1st) 160756, ¶ 65 (quoting *White v. Village of Homewood*, 256 Ill. App. 3d 354, 357 (1993)). Thus, " '[c]onsideration cannot flow from an act performed pursuant to a preexisting legal duty.' " *Id.* (quoting *White*, 256 Ill. App. 3d at 357).

¶ 59    Valid consideration existed for Olsak to enter the 2010 amended settlement. By 2010, Olsak only paid $1500 of the $5000 obligation required by the 2006 settlement. This breach entitled Pecoraro to seek reinstatement of his claim against Olsak. Olsak was not, as Country Mutual asserts, "unconditionally and forever released and discharged" from all claims arising from the October 21, 1998, incident. Instead, Olsak's release was conditioned on his compliance with his promises under the agreement. Specifically, section 4.2 of the 2006 settlement provided, "A failure to cure, or material failure to cooperate by Thomas Olsak, constitutes a breach of this Agreement which would entitle Joseph Pecoraro to seek reinstatement of his Lawsuit against Thomas Olsak." While it is unclear when Pecoraro provided Olsak an opportunity to cure the breach by paying the remaining $3500, the record clearly shows that Olsak was unable to pay. Even by 2010, Olsak did not have any substantial assets other than his claims against Country Mutual and TIG. Thus, in exchange for the forbearance of the remaining $3500 payment, Olsak received a benefit in avoiding any judgment in the underlying tort action or a new contract action for which he had no funds to defend.

¶ 60    Valid consideration also existed for Pecoraro. After Country Mutual argued that the 2006 settlement was invalid for lacking a specific dollar amount, Pecoraro did not want the agreement declared a nullity. Since Olsak was in default of the agreement, Pecoraro could have reinstated

Olsak as a defendant in the underlying action or brought a new breach of contract claim against Olsak. He chose instead to enter into a forbearance agreement with Olsak that modified the terms of the 2006 agreement to include the missing settlement amount. In exchange for forbearing his rights against Olsak, Pecoraro received certainty that he could demand a *Guillen* hearing.

¶ 61    Regarding the settlement amount in the 2010 amended settlement agreement, Country Mutual argues that the circuit court's finding of reasonableness was against the manifest weight of the evidence. Country Mutual maintains that Olsak was not provided a contrary view of the medical evidence because of the joint representation; therefore, the amount was necessarily inflated because an independent counsel might have negotiated a lower settlement. While a lower settlement amount was certainly possible, the circuit court's inquiry was not to determine whether the amount was the lowest possible, only that it was reasonable. The available evidence in this case shows that the $6 million settlement amount was reasonable.

¶ 62    Messineo testified that, prior to modifying the 2006 agreement, he reviewed approximately 30 to 40 Jury Verdict Reporters and narrowed them down to those that had injuries most similar to Pecoraro's injuries. Messineo also testified that he had assisted in preparing the summaries of medical testimony that were contained within the 2010 amended settlement. During negotiations, Messineo and Olsak went through the Jury Verdict Reporters of verdicts and settlements that were attached to the modified agreement. Olsak was shown a range of verdicts that were both above and below the proposed $6 million settlement amount. There was no evidence that Messineo simply suggested the highest amount or exaggerated Pecoraro's injuries.

¶ 63    Country Mutual argues that no prudent uninsured would have increased his liability from $5000 to $6 million, but this argument conflates two distinct provisions in the 2006 settlement.

Section 2.1 of the 2006 agreement stated that Olsak would pay $5000 "for the purpose of defraying attorney fees and expenses incurred by Joseph Pecoraro in the Country Mutual Action," referring to Country Mutual's claim for declaratory judgment. The $5000 obligation was never a determination of Pecoraro's damages for his injuries. As stated above, the 2006 settlement agreement did not contain an amount for compensatory damages but instead left that determination for a court or jury. Obviously, Country Mutual did not believe the $5000 obligation was the settlement amount because Country Mutual argued that the 2006 settlement was invalid for lacking a specific dollar amount. Now, Country Mutual suggests not only was the 2006 settlement valid, but also contained the dollar amount that it previously insisted was missing. Country Mutual cannot have it both ways.

¶ 64     The circuit court concluded that the $6 million settlement amount was fair and reasonable in light of Pecoraro's injuries and a review of the voluminous medical records, discovery, and evidence depositions. The court also acknowledged the "often-times conflicting trial testimony." Country Mutual, however, insists that certain instances of conflicting testimony compel a different outcome.

¶ 65     We acknowledge, like the circuit court, that obvious contradictions exist in the record. The most significant contradiction was evidence suggesting that Pecoraro was in a coma for multiple days following the 1998 incident. He was not. Pecoraro briefly lost consciousness but was never in a coma. Despite this and other contradictions, the circuit court found that the vast medical evidence is supportive of the $6 million amount. Based on the testimony of witnesses, we note the record is clear that Pecoraro suffered a severe head injury. He testified that his injury led to a loss of taste and smell, memory loss, vision loss, cognitive deficits, and head pain. The court gave

considerable weight to Pecoraro's testimony and found his injuries "real and impressive." Additionally, the reasonableness of the $6 million amount was substantiated by the expert testimony of Faustin Pipal, a professional mediator, who testified that verdicts and settlements involving similar injuries in the relevant time-period fell in the range of $5.75 to $9.35 million. Pipal concluded that $6 million was a reasonable settlement value for Pecoraro's injury claim, even without taking into consideration Pecoraro's claims for lost income and lost value of his business. Therefore, the circuit court's finding that the $6 million amount was reasonable was not against the manifest weight of the evidence.

¶ 66    The second issue in Country Mutual's appeal concerns the circuit court's denial of Country Mutual's motion for an independent medical examination (IME) of Pecoraro. Country Mutual argues that the denial of an IME deprived it of a fair trial.

¶ 67    Country Mutual's right to an IME was governed by Illinois Supreme Court Rule 215 (eff. Jan. 1, 2018), and Rule 215(a) provides, in relevant part:

> "In any action in which the physical or mental condition of a party or of a person
> in the party's custody or legal control is in controversy, the court, upon notice and
> on motion made within a reasonable time before the trial, may order such party to
> submit to a physical or mental examination by a licensed professional in a discipline
> related to the physical or mental condition which is involved." Ill. S. Ct. R. 215(a)
> (eff. Jan. 1, 2018).

¶ 68    The circuit court's decision regarding whether to allow or deny an IME under Rule 215 is reviewed for an abuse of discretion. *Kaull v. Kaull*, 2014 IL App (2d) 130175, ¶ 82. We will not disturb the circuit court's ruling regarding a Rule 215 examination unless the court has abused its

discretion. *Id.* The circuit court abuses its discretion when no reasonable person would take its view. *In re Marriage of Eberhardt*, 387 Ill. App. 3d 226, 233 (2008).

¶ 69    On March 11, 2016, the circuit court entered a discovery order and clarified the scope of the *Guillen* hearing. The court ruled that evidence of Pecoraro's condition since the day of the 2010 amended settlement was not relevant and must be barred. On April 22, 2016, Country Mutual filed a motion for an IME of Pecoraro to determine whether his injuries were permanent. The circuit court denied the motion, finding that Pecoraro's current physical condition was not in controversy and could not provide evidence bearing on the reasonableness of the 2010 amended settlement.

¶ 70    Country Mutual filed another motion for an IME of Pecoraro on November 13, 2017, and the motion was again denied because "Pecoraro's condition after the settlement is not relevant." On October 11, 2018, Country Mutual filed a motion to bar certain expert witnesses or, in the alternative, to allow independent medical examinations of Pecoraro. At the hearing on the motion, the following exchange occurred:

> THE COURT: So, going back to my question, why do you need—
>
> CARLSON (Country Mutual's counsel): The—
>
> THE COURT:—this?
>
> CARLSON:—IME then is because then someone is saying that it's permanent. How can you give an opinion that it's permanent in 2010 when you don't know what's going to happen in the future—or what has happened in the future?

THE COURT: Is it your position that the conditions as described by the various witnesses are wrong in the sense that he is not permanently personally injured?

CARLSON: Correct. I have records we just got that were disclosed earlier that were from an orthopedic. He had knee surgery in two thousand—knee injections in 2017 where he describes to his treaters then that that was his only real problem and that that was—he had no headaches and no other pains in his back.

\*\*\*

CARLSON: So, he's saying things in the records to subsequent doctors that are contradictory to his claim that they're permanent things, so—

THE COURT: So conceivably, yeah, I understand what you're saying is—

CARLSON: I would like to be able to bring that in to show that—

THE COURT:—they got it wrong. That he is—he's had a miraculous recovery, despite what the opinions were. The key though is what was his medical condition as of 2010 as it relates to the underlying resolution of the case. That's— that's the issue as I see it and as defined at the appellate court.

CARLSON: Medical and damages, right. Yeah.

THE COURT: So, your motion is denied as to the IME.

¶ 71    This exchange demonstrated that Country Mutual's clear purpose for requesting the IME was to highlight Pecoraro's present-day medical condition, not just his condition in 2010. Country Mutual's counsel admitted the purpose when he argued at the October 22, 2018, hearing, and on appeal, that the permanence of Pecoraro's injuries can only be proven by showing his current

condition. Despite Counsel's argument, the circuit court repeatedly ruled that Pecoraro's current condition was not in controversy because, in 2010, Olsak would not have known Pecoraro's future condition. We view Country Mutual's multiple requests for an IME as attempts to circumvent the circuit court's ruling. Because Pecoraro's current medical condition was not in controversy, an IME was not relevant and would not have materially aided in the just determination of the case. Therefore, the circuit court did not abuse its discretion in denying Country Mutual's motion for an IME.

¶ 72    Country Mutual's final issue concerns a denial of a setoff. Country Mutual argues that the circuit court erred when it refused to setoff TIG's settlement with Pecoraro against the damages awarded. The determination of whether a defendant is entitled to a setoff is a question of law and, therefore, subject to *de novo* review. *Thornton v. Garcini*, 237 Ill. 2d 100, 115-16 (2009).

¶ 73    In *Garcini*, the Illinois Supreme Court established two distinct meanings for the term "setoff." *Id.* at 113. First, a setoff may refer to a situation when a defendant has a distinct cause of action against the same plaintiff who filed suit against it. *Id.* Second, a setoff may refer to a defendant's request for a reduction of the damage award because a third party has already compensated the plaintiff for the same loss. *Id.* This includes instances where a codefendant who would be liable for contribution reaches a settlement with the plaintiff. *Id.* A request for this type of setoff constitutes an "enforcement action," which may be raised at any time. *Id.*

¶ 74    In this case, Country Mutual is referring to the second category of setoff. Country Mutual seeks to setoff TIG's $750,000 settlement with Pecoraro against the $3 million awarded to Pecoraro, but the unique and complicated nature of this case has a led to confusion regarding the application of a setoff. When TIG filed its motion for a good faith finding, it mistakenly believed

that the Joint Tortfeasor Contribution Act (Contribution Act) (740 ILCS 100/0.01 *et seq.* (West 2010)) applied. Specifically, TIG's motion requested:

"Under the circumstances, with considerable risks of litigation running both directions, with experienced attorneys negotiating at arm's length, TIG asserts that the Confidential Settlement Agreement and Release is made in good faith. As such, this Court should enter a finding that the Confidential Settlement Agreement and Release was made in good faith pursuant to the Illinois Contribution Among Joint Tortfeasor's Act and discharge TIG and from liability arising out of the Underlying Incident, bar contribution actions against TIG and determine that Country Mutual is entitled to a set-off in the full amount of the settlement from any judgment that may eventually be entered against it."

¶ 75 At the September 26, 2017, hearing on TIG's motion, the following statements were made by the parties and the court:

"CARLSON: I told both opposing counsel, I don't have an objection as long as it's noted somewhere, whether it's confidentially or otherwise, that should there ever be any award or judgment against Country Mutual for the same identical agreement to the Courts outcast [*sic*] with resolving the reasonableness and so forth, then we get a dollar-for-dollar credit for every payment—every dollar paid by TIG. Otherwise, we are not going to argue whether it is good faith or not.

\*\*\*

LERUM: The only point that I wish to raise with respect to any type of blanket order is this is a set off for all claims against Country Mutual, because I

don't believe that this settlement should be a setoff to the section 155 claim that's pending in which the Appellate Court has ordered we go forward on a hearing on.

\*\*\*

LERUM: It would be a set off, but not to the 155 claim because that—

\*\*\*

CARLSON: No, I don't have a problem if you view it's a setoff for every dollar amount in the case except for any claim under Section 155. It could go down to the one sentence, I think.

THE COURT: I agree. I think that is the correct interpretation of our case law.

\*\*\*

THE COURT: So, I'm not really hearing that as an objection, more of a concern that the Court will not view this statement between TIG and Olsak as something that would in any way not set off any damages that would be available to the plaintiff, and I am viewing this as just that. You are entitled to a setoff other than relative to any 155 claims, which was a claim—you know, whether it has merit or not."

¶ 76    All parties, including the court, were incorrect. Later, at the hearing on Country Mutual's posttrial motion for a setoff, the circuit court acknowledged its mistake, stating: "So, what is clear, I recognize the confusion, because of the prior order, what I'm saying upon reflection, and which is incorporated in my decision is that initial order, that initial finding in my opinion was totally unnecessary as that dealt with contribution."

¶ 77    The circuit court, in denying Country Mutual's motion for a setoff, concluded that its September 26, 2017, good-faith finding was unnecessary because the Contribution Act did not apply in this case. Because Lerum had already stipulated that Country Mutual was entitled to a setoff under the Contribution Act, Country Mutual argues that the circuit court was bound by that stipulation and had to enforce it.

¶ 78    "A stipulation is an agreement by the parties with regard to an issue before the court." *Dawdy v. Sample*, 178 Ill. App. 3d 118, 127 (1989). Stipulations are generally favored as they promote the efficient disposition of cases and simplification of issues. *Fitzpatrick v. Human Rights Comm'n*, 267 Ill. App. 3d 386, 390 (1994). Additionally, stipulations "will be enforced unless there is a proper showing the stipulation is unreasonable, violative of public policy, or the result of fraud." *Id.* While the parties may bind themselves by stipulation, they "cannot bind a court by stipulating to a question of law or the legal effect of facts." *Domagalski v. Industrial Comm'n*, 97 Ill. 2d 228, 235 (1983); *Dawdy*, 178 Ill. App. 3d at 127.

¶ 79    Here, Lerum's stipulation that the Contribution Act applied in this case was a misunderstanding of the law. Although the circuit court initially agreed with the parties' interpretation of caselaw, it eventually realized that their assessment was incorrect. On appeal, both sides agree that the Contribution Act does not apply. Nonetheless, Country Mutual argues that the court should have honored the stipulation because it was not challenged by any party. This argument would compel the court to disregard its own reading of the law and adopt an admittedly incorrect view simply because a party made a stipulation regarding the law. This would be improper as it invades the province of the court. " '[A] stipulation as to the legal conclusions arising from facts is inoperative.' " *American Pharmaseal v. TEC Systems*, 162 Ill. App. 3d 351,

356 (1987) (quoting *People v. Levisen*, 404 Ill. 574, 578-79 (1950)). We find that the circuit court properly disregarded the stipulation as it reflected an incorrect legal conclusion.

¶ 80    Country Mutual then argues that it is entitled to a setoff to prevent double recovery, even though the Contribution Act does not apply. The purpose of damages is to place the nonbreaching party in a position that he would have been in had the contract been performed, not to provide the nonbreaching party with a windfall recovery. *Jones v. Hryn Development, Inc.*, 334 Ill. App. 3d 413, 418 (2002). "The law is well settled that, where there is a single and indivisible injury, the damages are inseparable and any amounts received from any of the defendants must be deducted from the total damages sustained." *Young Men's Christian Ass'n of Warren County v. Midland Architects, Inc.*, 174 Ill. App. 3d 966, 970 (1988). Therefore, " '[a]n injured person is entitled to one full compensation for his injuries, and a double recovery for the same injury is against public policy.' " *Id.* (quoting *Eberle v. Brenner*, 153 Ill. App. 3d 700, 702 (1987)).

¶ 81    Illinois courts have held that the double recovery doctrine does not apply to settlement agreements. See *McMackin v. Weberpal Roofing, Inc.*, 2011 IL App (2d) 100461, ¶ 32; *Kim v. Alvey, Inc.*, 322 Ill. App. 3d 657, 672 (2001); *In re Salmonella Litigation*, 249 Ill. App. 3d 173, 183 (1993). In *Salmonella*, the court held that the double recovery doctrine "should not apply to settlements because a settlement is a contract which governs the plaintiff's recovery." *Salmonella*, 249 Ill. App. 3d at 183. *Salmonella* explained that for settlement agreements, courts will not attempt "to assess the damages necessary to fully compensate the claimants for their injuries." *Id.* Instead, the courts will only enforce the agreement and determine the amount of recovery permitted. *Id.* The court reasoned that "[w]ithout a determination following full litigation of a tort

case of the amount necessary to fully compensate claimants for their injuries, this court cannot say that any amount constitutes a double recovery." *Id.*

¶ 82    We find *Salmonella* persuasive. Like in *Salmonella*, no factfinder determined the amount necessary to fully compensate for Pecoraro's injuries. Here, the 2010 amended settlement, not a payment required pursuant to a judgment, governed Pecoraro's damages. As such, a setoff based on the double recovery doctrine does not apply because we cannot conclude what amount constitutes full compensation or double recovery. Consequently, we affirm the circuit court's decision to deny Country Mutual a setoff.

¶ 83                                  B. Olsak and Pecoraro Appeal

¶ 84    Olsak and Pecoraro first argue that the circuit court erred in not entering judgment in the amount of $6 million. In this case, the circuit court was not tasked with assessing the damages necessary to fully compensate Pecoraro for his injuries. It only had to determine whether the settlement amount established in the 2010 amended settlement was reasonable. The court held that the $6 million amount was indeed reasonable, but Country Mutual was not obligated to pay a judgment amount greater than its $3 million policy limits. Olsak and Pecoraro argue that the circuit court misapplied the law related to whether Country Mutual's conduct renders it liable over its policy limits. In reviewing the circuit court's conclusion of law, we apply a *de novo* standard of review. *Eychaner*, 202 Ill. 2d at 252.

¶ 85    Olsak and Pecoraro argue that once a court determines a settlement amount to be reasonable pursuant to *Guillen*, all other analysis should end, and the insurer must be liable for the full settlement amount, regardless of the policy limits. We disagree because an insurer's breach of its duty to defend does not expose the insurer to liability greater than the policy limits; it only estops

the insurer from raising policy defenses to the coverage that already exists. *Guillen v. Potomac Insurance Co. of Illinois*, 323 Ill. App. 3d 121, 137 (2001) (citing *Gould v. Country Mutual Casualty Co.*, 37 Ill. App. 2d 265, 290 (1962)), *aff'd as modified and remanded*, 203 Ill. 2d 141 (2003). "The rationale for the general rule is that an insurance company should not be made to pay for a loss for which it has not charged a premium." *Nationwide Mutual Insurance Co. v. Filos*, 285 Ill. App. 3d 528, 534 (1996). *Filos*, however, identified two exceptions to the general rule. *Id.*

¶ 86    The first exception applies "where an insurer misrepresents the extent of coverage to an insured, thereby inducing the insured to purchase coverage which does not in fact cover the disputed risk." *Id.* This exception does not apply here. The second exception applies "where an insurer defends an action on behalf of an insured, with knowledge of facts that would provide a defense to coverage, but without a reservation of rights." *Id.* Since Country Mutual never provided Olsak with a defense, this exception also does not apply.

¶ 87    We find *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127 (1999), inapplicable. *Ehlco* involved a dispute over insurance coverage for environmental property damages at two industrial sites. *Id.* at 130. At the first site, the insured received a letter from the United States Environmental Protection Agency (EPA), advising the insured that it may be liable for the costs related to environmental contamination. *Id.* at 132. The insured gave the insurer notice of the claims. The insurer responded that its policies did not appear to provide coverage for the potential claim. *Id.* at 132-33. On multiple occasions, the insured requested that the insurer reconsider its refusal to defend the insured against the EPA's claim, but the insurer provided no defense. *Id.* at 133. Eventually, the insured agreed to finance and perform certain environmental response actions and to reimburse the EPA for certain funds expended. *Id.* at 133-34.

¶ 88    At the second site, the insured was sued for indemnification for damages caused by environmental contamination. *Id.* at 134. The insured sent notice of this suit to the insurer and requested a response regarding the defense. The insurer acknowledged receipt of the insured letter and stated that it was searching for its policies, but the insurer did nothing other than request information from the insured. After the insured received a settlement offer, the insurer only offered to pay a fraction of the amount and defense costs. The insured rejected the insurer's offer and settled for the full settlement offer. *Id.*

¶ 89    After both underlying suits were concluded, the insurer sought declaratory judgment that it owed no duty to defend or indemnify the insured for environmental property damage at the second site. *Id.* at 135. The insured filed a counterclaim seeking a declaration that the insurer owed defense and indemnity coverage for the first site. The insurer then amended its complaint and sought a declaration of its obligations concerning the first site and moved to dismiss the insured's counterclaim as barred, asserting the insured breached a notice condition in the insurance policies. *Id.*

¶ 90    Our supreme court, in rejecting all the insurer's requests for cross-relief as to second site, held the general rule of estoppel applied. *Id.* at 150. The court explained:

> "The general rule of estoppel provides that an insurer which takes the position that a complaint potentially alleging coverage is not covered under a policy that includes a duty to defend may not simply refuse to defend the insured. Rather, the insurer has two options: (1) defend the suit under a reservation of rights or (2) seek a declaratory judgment that there is no coverage. If the insurer fails to take

either of these steps and is later found to have wrongfully denied coverage, the insurer is estopped from raising policy defenses to coverage." *Id.* at 150-51.

¶ 91    In this case, it is undisputed that Country Mutual had a duty to defend Olsak and breached that duty. Further, the estoppel doctrine bars Country Mutual from raising policy defenses. *Ehlco* extended the estoppel doctrine to bar defenses based on late notice. *American Safety Casualty Insurance Co. v. City of Waukegan, Illinois*, 678 F.3d 475, 485 (7th Cir. 2012). *Ehlco* did not conclude, as Olsak and Pecoraro allege, that the estoppel doctrine alone permits a settlement amount greater than the policy limits. That is an overly expansive interpretation for which there is no support. *Ehlco* was decided before *Guillen* and obviously did not address the issue of whether a settlement agreement is reasonable or whether a settlement amount over the insurer's policy limits is enforceable. The facts are distinguishable.

¶ 92    We also find *Delatorre v. Safeway Insurance Co.*, 2013 IL App (1st) 120852, distinguishable. In *Delatorre*, the insurer agreed to defend the insured under a reservation of rights and informed the insured that it had retained an attorney to undertake his defense. *Id.* ¶ 6. After filing an appearance and answer on behalf of the insured, the attorney took no further action to defend the insured. *Id.* ¶ 7. A default judgment was eventually entered against the insured in excess of the policy limits. *Id.* The *Delatorre* court held that the limited action by the attorney represented a breach of the insurer's duty to defend. *Id.* ¶ 26. Regarding damages, the *Delatorre* court relied on the Illinois Supreme Court's decision in *Conway v. Country Casualty Insurance Co.*, 92 Ill. 2d 388 (1982). *Delatorre*, 2013 IL App (1st) 120852, ¶ 33. The *Delatorre* court construed *Conway*

"to suggest two ways in which an insured may recover an excess judgment based on its insurer's breach of duty to defend: (1) tort based, as a punitive measure, where the insurer

has acted in bad faith, or (2) contract based, as a compensatory measure, where the insured's damages are proximately caused by the insurer's breach of duty." *Id.* The court then concluded that the insurer's breach was the proximate cause of the default judgment for which it was liable. *Id.* ¶ 35.

¶ 93    Regarding a tort-based claim, our supreme court in *Cramer v. Insurance Exchange Agency*, 174 Ill. 2d 513, 527 (1996), declined to recognize a separate stand-alone tort for bad faith. Instead, the court has explained that section 155 provides an extracontractual remedy to policyholders when the insurer's refusal to recognize liability and pay a claim under the policy is vexatious and unreasonable. *Id.* at 520. We separately address Olsak's and Pecoraro's section 155 claim below.

¶ 94    Relevant to our analysis is the contract-based claim described in *Delatorre*. The issue is whether Country Mutual proximately caused Pecoraro's any of the damages in excess of the policy limits. We hold that it did not.

¶ 95    In *Delatorre*, the default judgment was the direct result of the attorney's inadequate representation. *Delatorre*, 2013 IL App (1st) 120852, ¶ 35. Thus, the insurer was liable for damages beyond the policy limits because its breach of duty caused the excess judgment. That situation is not present here. If Country Mutual had provided Olsak with a defense at the outset of Pecoraro's action, the extent of its liability would have been the $3 million policy limits. That is undisputed. In 2009, after this court held that Country Mutual breached its duty to defend, Pecoraro attempted to settle his case against Country Mutual for $3 million. These are clear indicators that, prior to 2009, placing Pecoraro in the same position he would have been in had Country Mutual not breached its duty to defend would have cost $3 million. In 2010, Olsak and Pecoraro modified their 2006 agreement to include a $6 million settlement amount, which was based on Pecoraro's

permanent injuries. There is no evidence that Country Mutual's breach was the proximate cause of this additional $3 million. Olsak and Pecoraro do not allege that Pecoraro's injuries worsened between 2009 and 2010, causing an additional $3 million in damages and that Country Mutual's breach from a decade earlier was the proximate cause.

¶ 96    Because Olsak and Pecoraro have failed to show an exception to the general rule that an insurer's breach of duty to defend does not expose it to liability greater than the policy limits, or that Country Mutual's breach proximately caused Pecoraro's damages over the policy limits, the circuit court did not err in limiting Country Mutual's liability to the $3 million policy limits.

¶ 97    Olsak and Pecoraro next argue that the circuit court deviated from its remand jurisdiction by entering an order that Country Mutual's liability was capped by the policy limits of $3 million.

¶ 98    On remand, a circuit court "can take only such action that conforms to the judgment of the reviewing court." *Independent Voters of Illinois v. Illinois Commerce Comm'n*, 117 Ill. 2d 90, 102 (1987). When the reviewing court's directives are specific and unambiguous, the circuit court must enter a decree in accordance with the directions; but when the reviewing court does not give specific directions, the circuit court is to examine the appellate opinion and proceed in conformity with the views expressed therein. *Ertl v. City of De Kalb*, 2013 IL App (2d) 110199, ¶¶ 21-22. Whether a circuit court has exercised its discretion within the bounds of the remand is a question of law that this court reviews *de novo. Garley v. Columbia LaGrange Hospital*, 377 Ill. App. 3d 678, 681 (2007).

¶ 99    In *Olsak II*, this court instructed as follows:

    "[W]e remand the matter for a hearing regarding the reasonableness of the amendment, as set forth in *Guillen*, 203 Ill. 2d at 163-64. We also remand the matter

to the circuit court for a determination of the damages to which Pecoraro is entitled on the counterclaim against Country Mutual, taking into account the court's ruling as to the reasonableness of the amendment to the settlement agreement." *Olsak II*, 2014 IL App (1st) 121063-U, ¶ 28.

¶ 100 Olsak and Pecoraro contend that because Country Mutual failed to raise a policy limit defense, the circuit court did not have jurisdiction to consider whether Country Mutual's liability was capped by the policy limits of $3 million.

¶ 101 As stated above, Olsak's and Pecoraro's argument is that once a court determines a settlement amount to be reasonable, all other analysis must end, and the insurer must be liable for the full settlement amount, regardless of the policy limits. We find no support for their proposition, and neither did the circuit court. In determining damages, this court instructed the circuit court to "tak[e] into account" its ruling regarding reasonableness. The court then reviewed relevant caselaw and determined that there was no support for a judgment in excess of the policy limits under the present circumstances. The appellate court's mandate did not foreclose the circuit court from concluding Pecoraro's damages were capped by the policy limits. Therefore, the circuit court properly exercised its discretion on remand.

¶ 102 Olsak and Pecoraro next argue that the circuit court erred by denying Pecoraro's motion *in limine* that sought to bar any argument by Country Mutual that its liability was capped by the coverage limits contained in its two insurance policies.

¶ 103 On July 7, 2016, Judge Kathleen Kennedy denied Country Mutual's motion seeking to cap its liability at the $3 million policy limits. Pecoraro later sought to bar Country Mutual from

relitigating the July 7, 2016, order. At a hearing on Pecoraro's motion, the following discussion occurred:

"LERUM: The motion presented by Country Mutual before Judge Kennedy was for a ruling that Country Mutual's liability is capped at the coverage limits of the two policies which would be $3 million. And she denied the motion.

I'm just asking that any evidence referenced or argument that Country Mutual's maximum liability is capped at the policy limits as contained in the 2 insurance policies should be barred for purposes of this proceeding.

THE COURT: Why?

CARLSON: I thought that would be part of your findings of fact and conclusions of law as to what legal issues based on those facts create some exception that there should be some judgment above the policy limits.

Is there some—based on estoppel, breach of contract, some other conduct or not or, bad faith or whatever. I mean it's kind of premature to find that we already can't argue that the limits don't apply when you haven't heard the evidence yet and applied the law.

LERUM: But there is no pending motion.

THE COURT: No, but what is your argument that the limits don't apply?

LERUM: It's been decided. Well, I've presented these arguments and briefs to Judge Kennedy and she denied the motion.

THE COURT: Not binding on me."

¶ 104   On July 9, 2019, Judge Michael Mullen denied Pecoraro's motion *in limine*. Olsak and Pecoraro argue that Judge Mullen's handling of this issue was procedurally infirm since Country Mutual did not bring a motion to reconsider Judge Kennedy's July 7, 2016, order. We note that it was Pecoraro's motion *in limine* to bar Country Mutual from arguing the July 7, 2016, order that placed the issue before Judge Mullen.

¶ 105   Judge Kennedy's order denying Country Mutual's motion seeking to cap liability at the $3 million policy limit was not a final and appealable order. "The trial court order becomes the 'law of the case' only if there is a final and appealable order." *McDonald's Corp. v. Vittorio Ricci Chicago, Inc.*, 125 Ill. App. 3d 1083, 1087, 466 N.E.2d 1116, (1984). Our supreme court has disapproved of one judge reviewing interlocutory orders entered by another judge where there is evidence of bad faith or "judge shopping" by the party who obtains an adverse ruling. See *People ex rel. Phillips Petroleum Co. v. Gitchoff*, 65 Ill. 2d 249 (1976); *People ex rel. Kelly, Ketting, Furth, Inc. v. Epstein*, 61 Ill. 2d 229 (1974); *People ex rel. East Side Levee & Sanitary District v. Madison County Levee & Sanitary District*, 54 Ill. 2d 442 (1973). Here, there is no evidence of bad faith or "judge shopping" as the case was transferred to Judge Mullen after the retirement of Judge Kennedy. Judge Mullen found that "an insurer's breach of its duty to defend does not expose the insurer to liability greater than the policy limits, but only estops [the insurer] from raising policy defenses to the coverage that already exists," citing *Guillen*, 323 Ill. App. 3d at 137. We find that Judge Mullen did not err or abuse his discretion when he addressed the July 6, 2016, interlocutory order pursuant to Pecoraro's motion *in limine* where the case was assigned in the ordinary course of judicial reassignment, there was no bad faith, and there was no issue of "judge shopping". See *Rowe v. State Bank of Lombard*, 125 Ill. 2d 203, 214 (1988).

¶ 106   Finally, Olsak and Pecoraro argue the circuit court erred, as a matter of law, when it ruled that Country Mutual's conduct did not constitute bad faith claims practices under section 155. They also argue that the circuit court's findings were against the manifest weight of the evidence. The circuit court's decision on whether to impose attorney fees and costs under section 155 is reviewed for abuse of discretion. *Ehlco*, 186 Ill. 2d at 160. "A court abuses its discretion only where its ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would adopt the court's view." *Certain Underwriters at Lloyd's, London v. Abbott Laboratories*, 2014 IL App (1st) 132020, ¶ 68.

¶ 107   Section 155 of the Insurance Code "provides an extracontractual remedy to policyholders whose insurer's refusal to recognize liability and pay a claim under a policy is vexatious and unreasonable." *Cramer*, 174 Ill. 2d at 520. Section 155 provides, in pertinent part, "[i]n any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs" plus additional amounts set forth in the statute. 215 ILCS 5/155(1) (West 2020).

¶ 108   The purpose of section 155

> "is to punish insurance companies for vexatiously delaying or rejecting legitimate claims by holding insurers responsible for the 'expense resulting from the insured's efforts to prosecute the claim,' and discouraging them from using their 'superior financial position by delaying payment of legitimate contractual obligations' to profit at the insured's expense." (Emphases omitted.) *Cook v. AAA Life Insurance Co.*, 2014 IL App (1st) 123700,

¶ 47 (quoting *Neiman v. Economy Preferred Insurance Co.*, 357 Ill. App. 3d 786, 797 (2005)).

¶ 109 The relevant inquiry underlying a section 155 claim is "whether an insurer's conduct is vexatious and unreasonable." *Nine Group II, LLC v. Liberty International Underwriters, Inc.*, 2020 IL App (1st) 190320, ¶ 41. " 'Whether a delay is vexatious and unreasonable is a question of fact that must be assessed based on the totality of the circumstances, taken in broad focus.' " *Id.* (quoting *Cook*, 2014 IL App (1st) 123700, ¶ 48). The circuit court's findings will not be disturbed unless they are against the manifest weight of the evidence. *Cook*, 2014 IL App (1st) 123700, ¶ 51. A factual finding is against the manifest weight of the evidence only when the opposite conclusion is apparent, or when findings are arbitrary, unreasonable, or not based on the evidence. *Id.*

¶ 110 In determining whether conduct is vexatious or unreasonable, "[n]o single factor—*e.g.*, the length of time or the amount of money involved—is controlling." *Nine Group II, LLC*, 2020 IL App (1st) 190320, ¶ 41. Courts may consider the insurer's attitude, whether the insured was forced to file suit, and whether the insured was deprived use of its property. *Id.* " 'Additional considerations include whether there is a *bona fide* dispute concerning coverage, the extent of the insurance company's evaluation and investigation of the claim, and the adequacy of communications between the insurance company and the insured.' " *Id.* (quoting *Cook*, 2014 IL App (1st) 123700, ¶ 48). Where there is a *bona fide* dispute regarding coverage, costs and sanctions pursuant to section 155 are inappropriate. *Cook*, 2014 IL App (1st) 123700, ¶ 49. A *bona fide* dispute is one that is " '[r]eal, actual, genuine, and not feigned.' " (Internal quotation marks omitted.) *Id.* (quoting *McGee v. State Farm Fire & Casualty Co.*, 315 Ill. App. 3d 673, 683 (2000)). An insurer has not acted vexatiously or unreasonably under section 155 where that an insurer

"reasonably relie[s] upon evidence sufficient to form a *bona fide* dispute." (Internal quotation marks omitted.) *Illinois Founders Insurance Co. v. Williams*, 2015 IL App (1st) 122481, ¶ 32.

¶ 111 The circuit court found Country Mutual had a *bona fide* dispute concerning coverage. Specifically, the court found:

"Country Mutual was presented with only a single count that was directed at Olsak and alleged that Olsak had committed an intentional act. This specified assault was also alleged to have been committed willfully, maliciously, and not in self-defense. Neither the home nor umbrella policies covered damages caused by an insured's intentional acts. Additionally, at the time of the initial coverage analysis, there was nothing presented to Country Mutual to suggest a potential conflict of interest due to Country Mutual's separate and distinct responsibilities relative to Pudlo."

¶ 112 Understanding the timeline is crucial because, when Pecoraro filed his original complaint in October 2000, Olsak was the only defendant named and the only count was for assault and battery. Country Mutual denied coverage to Olsak in November 2000, asserting that his alleged intentional acts were not covered under the policies. At that time, Pudlo was not yet a defendant, so there was not an obvious conflict of interest. Under these circumstances, the court found Country Mutual's decision not to defend Olsak reasonable. That finding was not against the manifest weight of the evidence.

¶ 113 Olsak and Pecoraro argue that Country Mutual's four-and-a-half-year delay in filing its declaratory judgment action, after receiving notice of the underlying action against Olsak, was vexatious and unreasonable. The circuit court disagreed and explained that even though the Chilton

Yambert Law Firm represented both Olsak and Pudlo, Country Mutual never received reports on Olsak's case. The court found that "Chilton Yambert's knowledge of the affirmative defense is not properly imputed to Country Mutual as Chilton Yambert was not being paid by Country Mutual to represent Olsak." Thus, when the case against Pudlo was dismissed in March 2002, the Chilton Yambert Law Firm's reporting requirements of the case to Country Mutual ended, and Country Mutual did not have knowledge of the case until May 2004, when it retained Shipley, on behalf of Pudlo, to monitor the case. Additionally, the court found that Country Mutual did not become aware of Olsak's June 2003 affirmative defense until after May 2004. After Fremd filed a counterclaim for contribution in April 2003, Country Mutual filed its declaratory judgment action in February 2005 in response to that counterclaim. Despite the length of years, the court found that Country Mutual's conduct was reasonable under the circumstances. That finding was not against the manifest weight of the evidence.

¶ 114 *Williams v. American Country Insurance Co.*, 359 Ill. App. 3d 128 (2005), is distinguishable. In *Williams*, a taxicab company and one of its drivers were named as defendants in a civil complaint. *Id.* at 131. Both defendants were insured by the same insurer, which assumed their defense. *Id.* The interests of the defendants were diametrically opposed and presented the insurer with a conflict of interest. *Id.* at 139. Nonetheless, the insurer controlled the driver's defense in the underlying case for nearly three years, despite the existence of the conflict and the driver's efforts to obtain new counsel. *Id.* at 142. The *Williams* court affirmed the circuit court's award of section 155 penalties, finding that the court did not abuse its discretion. *Id.* Here, unlike in *Williams*, Country Mutual never assumed Olsak's defense. Further, when Country Mutual denied a defense to Olsak, there was not an obvious conflict of interest present.

¶ 115   Based upon our review of the record, as well as the circuit court's detailed opinion, we cannot find that the circuit court's decision was arbitrary, fanciful, or unreasonable or that no reasonable person would adopt the court's view. As such, the circuit court's decision to deny damages pursuant to section 155 was not an abuse of discretion.

¶ 116                                    III. CONCLUSION

¶ 117   We affirm the circuit court's finding that the 2010 amended settlement was reasonable and that the $6 million settlement amount was reasonable. We affirm the court's decision to limit the award against Country Mutual to the $3 million policy limits. We affirm the court's denial of Country Mutual's posttrial motion for a setoff and motion for an independent medical examination. Finally, we affirm the circuit court's denial of the award of attorney's fees and costs pursuant to section 155 of the Insurance Code because Country Mutual's conduct was not unreasonable or vexatious.

¶ 118   Affirmed.

2022 IL App (1st) 200695

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 05-CH-2618; the Hon. Michael T. Mullen, Judge, presiding. |
| **Attorneys for Appellant:** | Keith G. Carlson, Jeffery A. Bier, and David M. Jenkins, of Carlson Bier Associates, LLC, of Chicago, for appellant. |
| | Normal J. Lerum and Catherine E. Lerum, of Norman J. Lerum, P.C., of Chicago, and James Messineo, of James Messineo & Associates, of Inverness, for other appellants. |
| **Attorneys for Appellee:** | Catherine E. Lerum and Normal J. Lerum, of Norman J. Lerum, P.C., of Chicago, and James Messineo, of James Messineo & Associates, of Inverness, for appellees. |